## S02A1633. COCHRAN v. THE STATE.
### (576 SE2d 867)

SEARS, Presiding Justice.

The appellant, Antonio Cochran, appeals from his convictions for several crimes stemming from the shooting death of Sarkis Hazzouri.[1] On appeal, Cochran contends, among other things, that the

---

[7] OCGA § 51-12-5.1 (b), (c).

[1] The crimes occurred on March 27, 1997, and Cochran was indicted on May 8, 1997. He was charged with the malice murder and felony murder of Sarkis Hazzouri; with the aggravated assault of Rick Cesere and Teresa Grant; with three counts of the possession of a firearm during the commission of a crime; and with the possession of a firearm by a convicted felon. During trial, the trial court directed a verdict of acquittal as to the aggravated assault

trial court erred in its charge on intent and in excluding a statement given to the police by a witness shortly after the crime. We conclude that the erroneous charge on intent necessitates the reversal of Cochran's malice murder conviction, and that on remand the State may retry Cochran for malice murder, or may, instead, have the trial court sentence Cochran on his felony murder conviction, which is not affected by the erroneous charge on intent. We find no reversible error in Cochran's other contentions. Accordingly, we reverse his malice murder conviction, affirm his convictions for aggravated assault and for the possession of a firearm during the commission of a crime, and remand for proceedings consistent with this opinion.

1. On the evening of March 27, 1997, Cochran went with a friend to meet some people at a recording studio. As Cochran pulled his car into the parking lot where the studio was located, the people he intended to meet were pulling out. Cochran stopped his car and began a conversation with them. The position of their cars blocked traffic from entering or exiting the parking lot. As Cochran and the people in the other car talked, a Toyota 4Runner pulled up behind the other car. The man driving the Toyota, Rick Cesere, testified that he politely asked the drivers of the other cars to move so that he and his passengers could leave. Cesere testified that Cochran began screaming obscenities at him, and that he (Cesere) told Cochran that he just wanted to "get by" and did not "want any trouble." Cesere added that Cochran continued to swear at him, and that he (Cesere) reiterated that he just wanted to leave and did not want any trouble. Cesere stated that Cochran continued to swear, and that, as he (Cesere) had no place to go, he got out of the Toyota to ask Cochran "what his problem was." Cesere's passengers, Teresa Grant and Sarkis Hazzouri, also got out of the Toyota. According to Cesere, Cochran's passenger told the two men to "be cool" and "chill," and Cochran leaned to the right in the car. Cesere testified that he

---

and possession of a firearm charges relating to Rick Cesere. The State disposed of the offense of the possession of a firearm by a convicted felon by an order of nolle prosequi. On April 22, 1998, a jury found Cochran guilty of the remaining charges. The felony murder conviction was vacated as a matter of law, *Malcolm v. State*, 263 Ga. 369, 371-372 (434 SE2d 479) (1993), and the trial court sentenced Cochran to life in prison for malice murder; to twenty consecutive years in prison for the aggravated assault of Grant; and to five consecutive years in prison on the possession offenses. On April 27, 1998, Cochran filed a pro se motion for new trial, and on May 20, 1998, the trial court appointed new counsel to represent Cochran on appeal. The court reporter completed the certification of the trial transcript on December 9, 1999. On December 17, 2001, Cochran filed an amended motion for new trial, and on February 4, 2002, Cochran obtained new appellate counsel, who filed an amended motion for new trial on April 2, 2002. The trial court denied the motion for new trial, as amended, on April 15, 2002. On April 26, 2002, Cochran filed a notice of appeal, and on July 11, 2002, the appeal was docketed in this Court. The appeal was submitted for decision on briefs on September 2, 2002.

thought Cochran might be reaching for a gun; that he (Cesere) then turned to walk back to his Toyota; and that he told Hazzouri and Grant that it was time to leave. Cesere added that he and Hazzouri and Grant started to walk back to his Toyota, but that Cochran called Grant a "bitch" and asked Hazzouri, "Why don't you keep your bitch under control?" Cesere testified that Hazzouri took two steps toward Cochran's car, "the door came open," and there were three shots. Grant testified that after Hazzouri stepped toward the car, she realized that Cochran's door was open, and that she saw gunshots being fired.

Cochran testified that he feared for his safety during the altercation and retrieved a gun from underneath his seat and pulled the slide back. As Cesere moved back toward his Toyota, Cochran testified that he began to drive away, but heard the tone signaling that a door of his car was being opened. He testified that he attempted to drive away as Hazzouri grabbed him, that his car stalled and jerked, and that as a result, the gun fired twice, wounding Hazzouri. Hazzouri was hit with two bullets and died almost instantly. Cochran fled the scene, and drove to a nearby apartment complex. It is undisputed that neither Cesere, Hazzouri, nor Grant had a weapon.

Viewing the evidence in the light most favorable to the verdict, we conclude that it was sufficient to support Cochran's convictions.[2]

2. Cochran correctly contends that the trial court gave a charge on intent that violated the rule that this Court established in *Harris v. State*.[3] Moreover, we cannot conclude that the error was harmless with regard to Cochran's malice murder conviction, as the issue of intent was the decisive issue in the case and as the evidence of intent, which consisted of a conflict between the testimony of Cesere and Grant and the testimony of Cochran, did not overwhelmingly establish that Cochran intended to kill the victim.[4] Accordingly, we must reverse Cochran's malice murder conviction. Because of that reversal, however, Cochran's conviction for felony murder "no longer stands vacated as a matter of law. The State may now choose to retry [Cochran] on malice murder, or it may choose to have [Cochran] sentenced on the felony murder conviction. Therefore, we remand to the trial court for retrial or re-sentencing."[5]

3. Cochran could not locate an eyewitness to the crime before trial, and the trial court excluded from evidence a statement that the

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] 273 Ga. 608, 609-610 (543 SE2d 716) (2001).

[4] See *Harris*, 273 Ga. at 609-610. Compare *Rouse v. State*, 275 Ga. 605, 606 (571 SE2d 353) (2002) (overwhelming evidence of intent to kill rendered harmless an erroneous charge on intent under *Harris*).

[5] *Wallace v. State*, 275 Ga. 879, 881 (2) (572 SE2d 579) (2002). Accord *Pace v. State*, 274 Ga. 69, 70-71 (548 SE2d 307) (2001).

witness gave to the police shortly after the crime, ruling that it was not admissible under the necessity exception to the hearsay rule. On appeal, Cochran contends that that ruling was erroneous. We conclude, however, that even assuming the trial court erred in excluding the statement, the error was harmless. Contrary to Cochran's contention, the witness's statement does not show that Cochran's gun fired accidentally. Instead, the witness stated that he saw Hazzouri reach toward Cochran's vehicle, and that, as Hazzouri was reaching for the door, the door opened and three or four shots were fired. Thus, the statement does not support Cochran's testimony that Hazzouri actually opened his door, does not support his defense of accident, and does not support Cochran's testimony that he fired only two shots. For these reasons, we conclude that any error in excluding the hearsay statement was harmless.

4. Cochran next contends that the trial court erred by allowing a witness to testify that Cochran had pulled a gun on him after the witness had made a "joke" directed at Cochran. We disagree. In *Boyd v. State*,[6] the victim had an altercation with the defendant, and several hours later the defendant shot and killed the victim. The trial court admitted evidence that, about ten months before the murder, the defendant had had an argument with a man named Richardson, after which the defendant shot at but missed Richardson. This Court concluded that that similar transaction evidence was admissible, as it was "probative of appellant's course of conduct and bent of mind in resolving disputes."[7] Similarly, here, evidence that Cochran pulled a gun on another person after the person embarrassed him was admissible to show Cochran's course of conduct in resolving his disagreements.[8]

5. Finally, we conclude that the two other issues raised by Cochran are without merit.[9]

*Judgment affirmed in part, reversed in part, and case remanded for proceedings consistent with this opinion. All the Justices concur, except Hunstein and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

I concur fully in Divisions 1, 3, 4, and 5 of the majority opinion. With respect to Division 2, I agree that the charge authorizing the jury to draw a permissive inference of intent violated the rule of *Harris v. State*, 273 Ga. 608, 609 (2) (543 SE2d 716) (2001). In my opin-

---

[6] 275 Ga. 237 (564 SE2d 185) (2002).

[7] Id. at 238.

[8] Id.

[9] Those contentions are (1) that trial counsel was ineffective for failing to object to evidence that Cochran alleges was irrelevant and prejudicial, and (2) that the trial court erred by improperly commenting on the evidence.

ion, however, this non-constitutional error is clearly harmless. Accordingly, I dissent to Division 2 and the judgment of reversal.

It is well-settled that a *Harris* violation is "not of constitutional magnitude. [Cit.]" *Harris v. State*, 274 Ga. 422, 426 (6) (d) (554 SE2d 458) (2001). Thus, for the error to be harmless, it need only be "highly probable" that the erroneous charge did not contribute to the judgment. *Scott v. State*, 275 Ga. 305, 308 (5) (565 SE2d 810) (2002); *Harris v. State*, 273 Ga., supra at 610 (2). Compare *Pace v. State*, 274 Ga. 69, 70 (2), fn. 9 (548 SE2d 307) (2001). Therefore, we have repeatedly affirmed convictions with *Harris* errors, by finding overwhelming or even strong, but less than overwhelming, evidence of malice. *Rouse v. State*, 275 Ga. 605, 606 (2) (571 SE2d 353) (2002); *Harris v. State*, 274 Ga., supra at 426 (6) (d).

According to the majority, the non-constitutional error here is reversible merely because the self-serving testimony of the defendant furnished some conflicting evidence of intent. However, the true test for harmless error is whether the evidence of intent *other* than the defendant's testimony was so weak that we cannot find a high probability that the improper charge did not contribute to the jury's verdict. *Stockford v. State*, 276 Ga. 241, 242 (2) (575 SE2d 889) (2003). In *Stockford*, the defendant testified that he accidentally shot the victim, but other eyewitness testimony that there was a pause and three more shots made it highly probable that the *Harris* charging error did not contribute to the verdict, even though four witnesses heard only two shots. Similarly, eyewitnesses in the instant case overwhelmingly refuted Cochran's uncorroborated testimony that he accidentally shot the victim while trying to defend himself.

Therefore, the correct application of the non-constitutional harmless error analysis results in the conclusion that it was highly probable that the erroneous charge did not contribute to the verdict in this case. See *Stockford v. State*, supra; *Harris v. State*, 274 Ga., supra at 426 (6) (d) (the defendant claimed that he was defending against an unlawful sexual assault); *Barnes v. State*, 269 Ga. 345, 352 (12) (496 SE2d 674) (1998) (Sears, J.) (harmless error analysis involved consideration of the amount of evidence available to refute the defendant's testimony of self-defense); *Sandoval v. State*, 264 Ga. 199, 200 (2) (c) (442 SE2d 746) (1994) (eyewitness testimony made evidence overwhelming despite the defendant's conflicting testimony).

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED FEBRUARY 10, 2003 —
RECONSIDERATION DENIED MARCH 10, 2003.

*Barry M. Hazen*, for appellant.

*Patrick H. Head, District Attorney, Andrew J. Saliba, Amy H. McChesney, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ruth M. Pawlak, Assistant Attorney General*, for appellee.